No. 5.—John F. Troutman, plaintiff in error, *vs.* Samuel B. Barnett, *et al.* defendants.

[1.] At Common Law, a contract which is not tainted with usury in its inception, is not made usurious by a subsequent agreement to pay usury in consideration of forbearance.

[2.] Under the Statutes of Georgia, if a judgment not tainted with usury is transferred, and the transferee agrees with the defendants to forbear its collection for a term of time, in consideration of usurious interest paid him, such subsequent agreement is usurious, and affects the judgment so far as to make the principal due thereon only collectible.

Certiorari, in Crawford Superior Court. Decided by Judge Stark, February Term, 1850.

John F. Troutman purchased a judgment against one Arthur F. Walker and Samuel B. Barnett. In order to secure indulgence thereon, Walker executed to Troutman his note for fifteen dollars; afterwards, the judgment was renewed—Walker and Barnett giving to Troutman their notes for the principal and interest due thereon. Troutman brought suit upon the notes, in a Justice's Court in Crawford County, against the defendant, who filed a plea of usury to the same.

. On the trial, the Jury returned a verdict for the principal alone due on the notes.

A certiorari was taken by the plaintiff to the Superior Court. The Court affirmed the verdict of the Jury, and dismissed the certiorari.

To which decision counsel for plaintiff excepted.

Strong and Hammond, for plaintiff in error.

Culverhouse, for defendants.

*By the Court.*—Nisbet, J. delivering the opinion.

[1.] Under the British Statutes of usury, it has been firmly settled, that to defeat a contract on the ground of usury, it must

have been usurious at the time the debt or demand was created thereby. No *subsequent* reservation of usurious interest, or posterior arrangement for a usurious security, will taint or invalidate the original claim. Under the English Statutes, such subsequent security will be infected with usury, and the penalty is incurred. But if the original contract be pure, it remains so, and is a valid contract in whosesoever hands it may legally fall. *Tate vs. Wellings*, 3 *T. R.* 539. 1 *Saund.* 295, *n.* 1. *Parr vs. Ellison*, 1 *East.* 92. *Phillips vs. Cockayne*, 3 *Camp.* 119. *Parker vs. Ramsbottom*, 3 *B. & C.* 257, 270. 5 *D. & R.* 138, 151. 13 *Conn.* 249. 11 *Mass.* 359. 19 *Johns. R.* 394.

I accede to the reasoning upon which this rule is founded. A *contract* fair, under the law, when made, is fair to the end. As the evidence and rule of the liabilities of the parties, it is fixed, and continues to be the measure of their rights and liabilities, irrespective of subsequent collateral arrangements; and the assignee of such a contract, accedes to all the rights of the original payee. So far as it is concerned, it stands unaffected by any usurious contracts growing out of it, either between the maker and the payee, or the maker and the subsequent holder. All this is true and sound, as to the Common Law principles upon which it rests. But when I consider how stringent is the Statute against usury, and how laboriously the Courts have struggled against any evasion of them, and how many technical rules have been broken down to get at and annul usurious contracts, I confess that I am astonished that so palpable a *shift*—so clumsy a device as this, should have been so long tolerated. A promissory note for a sum loaned, and lawful interest, and due one day after date, is a valid note. But two days after its date, the parties come together, and it is agreed between them, that for forbearance to sue on that note for one year, the maker will pay 25 per cent. and for such forbearance does pay 25 per cent. Now, such a transaction, so obviously a device to evade the Statute, cannot be reached. The note is good, although it may be a hook whereon to hang usury for years. This is the more remarkable, because the British, and I may say, American law-makers, instead of attempting to specify all the cases wherein usury may be found to exist, have laid

the axe at the root of the tree, by making all shifts, devices and pretences, by which usury is reserved, subject to the law of usury. The Legislature, seeking by such guarantees, to reach any case, when it is within the intention of the parties to pay and receive more than lawful interest. *Lord Mansfield in Lowe vs. Waller, Doug.* 739. The language of our own Statute is very general and comprehensive. The Legislature have charged the Courts in this way, with the duty of preventing usury. The wonder is, that the Courts have not made the subsequent reservation of usurious interest a new contract, embracing within it the old. A good rule, certainly, would be, to hold the subsequent reservation of usury as evidence of an original intent to reserve it. I am aware that such a rule has been refused. See *Fussil vs. Brooks,* 2 *C. & P.* 318. *Chitty on Contracts,* 705.

At Common Law, then, the plaintiff below was entitled to recover his principal, with lawful interest, notwithstanding he did receive usury in consideration of forbearance on the judgment. The judgment is not tainted with usury, for the contract on which it is founded was not. Coming into the plaintiff's hands by purchase, he acquired all the rights under it, of the plaintiff in execution, and the renewal of the debt at the expiration of one year, by note, for principal and lawful interest, is but the continuation of the original contract. Upon authority at Common Law, we so rule.

[2.] But this Court is not bound by the English Statutes of usury, and the constructions put upon them by the English Courts. We did not adopt them, for we had a Colonial Act, which was adopted, passed in 1759. *Prince,* 294. Whether the construction of our Act of 1759, by the Colonial Courts, or of the State Courts, up to the adoption of our present Usury Law in 1822, was in accordance with that adopted in England, upon the subject now under review, I have no means of knowing. Of the judgments of these Courts, we have no record. That which does not appear, so far as this question is concerned with the maxim, does not exist. We are, therefore, free to construe the Act of 1822 for ourselves, and are at liberty to carry out the policy and intent of the Legislature in relation to usury. The Act of 1759 made

all usurious contracts void, and subjected the lender to a forfeiture of treble the value of the thing or money loaned. The Act of 1822 repeals the Act of 1759, as to the forfeiture and the making void the whole contract, but declares that the principal due thereon shall be recoverable, and no more, leaving the contract, as to the lawful and usurious interest, void. *Prince,* 295. The Act of 1845 re-enacts, in a different form, the Act of 1822, adding the words, " by or with an incorporated bank, or any other person or persons, whether natural or artificial," and changing the lawful rate of interest from eight to seven per centum. The Act of 1845 is in the following words : " That all contracts, bonds, notes and assurances whatsoever, made after the passage of this Act," by or with an incorporated bank, or any other person or persons, whether natural or artificial, " for the payment of any principal on money, goods, wares or merchandise, or other commodities whatsoever, to be lent, covenanted, to be performed upon, or for any usury whereupon or whereby there shall be reserved or taken above the rate of seven per centum per annum, shall be void and of no effect, except so far as to authorize the recovery of the principal due thereon, and no more." *Pamphlet of* 1845, *page* 35.

In construing the Act of 1845, the preceding Acts are to be considered, because *in pari materia.* Under the Acts of 1822 and 1845, the contract, so far as the interest is concerned, is upon the same footing with the Act of 1759, so far as the whole contract is concerned ; that is to say, it is utterly void. Now, we are to do with the contract, only so far as the interest is concerned ; and the question is, under these Acts, is this judgment void as to the interest, on account of usury, becaus the eassignee, occupying the place of the plaintiff in the judgment, agreed with the defendant, in consideration of usurious interest paid him, not to enforce it for a term of one year ? We have seen that, at Common Law, it is not void.

According to the reason upon which all laws against usury are based, it is. One of those reasons is, that the money holder, and in this case, the creditor, shall not avail himself of the necessitous condition of his debtor, to exact of him burdensome and

oppressive terms.   The law mercifully restrains both the power and the cupidity of the creditor, by limiting interest upon loans and all contracts to a fixed rate—seven per centum—and to insure against cruel exactions, makes lawful interest irrecoverable, if more is contracted to be paid.   Does not the reason apply in this case?   Here the plaintiff pays no money in hand to the defendant, but he gives time upon money due, in consideration of usurious interest—he forbears day of payment, because the debtor has paid him usury.   It does not differ from an original loan.   The money due on the judgment belongs to the plaintiff; it is in the hands of the defendant.   It is the same in principle as if the plaintiff had said to the defendant, " you have in your hands so much money which belongs to me; if you will pay me so much interest per annum, you may retain and use it for a year."   To which the defendant agrees, and the contract is closed. Is not that an usurious contract?   It is not questioned but that it is, and if remaining executory, could not be enforced.   The agreement to pay usury thus, could be defeated by the plea of usury, and clearly, under the old law, would subject the lender to the forfeiture; and if executed, as it was here, very clearly, the usury may be recovered back.   But the inquiry goes farther and reaches deeper.   Is it not such a new contract as merges the judgment, and defiles that with the taint of usury?   The money due on the judgment is the basis of the new contract; it is for the use of that money that the defendants pay the usury; it is in reference to the judgment that the parties contract; it is about it that they " covenant."   Now, if, under the old law, such a transaction would subject the plaintiff to the forfeiture, and it clearly would, I enquire, what would be, in such a case, the forfeiture?   It would be treble the value of the money loaned!   And what is the money loaned?   Why, the sum due on the judgment. Under the new law, the contract has the same relation to the judgment, which it would have under the old law, so far as the interest is concerned.   If so, is not the interest forfeited?   That is not collectible under the new law.   If, under the circumstances, the lender moves (not upon the judgment, for that was extinguished by giving the notes, but upon those notes) to collect

his money, is he not fairly met by a plea of usury under our Statute? The notes are but a continuation of the subsequent agreement, by which usury was contracted to be paid, and which agreement drew after it the judgment. However, as I concede, this reasoning may be obnoxious to some technical objections, yet, I am satisfied that it is fairly drawn from the Statute, and certainly, in strict conformity with its policy. That policy is *to inhibit the taking of usury*, under every and any pretence or contrivance. Note, too, that in this case, the lender occupies, above all others, the position most commanding for taking advantage of the necessitous condition of the borrower. He holds him under execution—one more turn of the screw, and he is crushed. If the Statute of usury cannot prevent the enforcement of this contract, then it needs no argument to show that it is impotent to effect the very object of its enactment.

But let us apply the Statute with more closeness to this transaction. This judgment is an evidence of a debt due; it is, I admit, the evidence of a debt due upon the primary contract; but what is it under this new arrangement—this subsequent contract? It is an *assurance* of the debt at the time of this subsequent contract, recognized by the parties. It is agreed to be collectible by the plaintiff at the end of a given term of time, and for not collecting it before, the usury is paid. How is this new contract evidenced? By the note given for 15 dollars of usurious interest, and by the judgment. The plaintiff is *assured* in his principal and lawful interest by the judgment, and he takes a note separately for the usury. Now, by the Statute, all *assurances* for the payment of money *to be lent, covenanted or performed upon, or for any usury whereupon or whereby there shall be reserved or taken above the rate of seven per centum per annum, shall be void and of no effect*, except to authorize the recovery of the principal, &c. Does not the Act embrace the transaction? It seems to me that it does. It is within its spirit and its policy, beyond all question; and if so, no rule of the Common Law is applicable to it. The Statute is our guide.

Let the judgment be affirmed.