### MOSELY *v.* EVANS *et al.*

1. One who takes a turpentine lease upon land which is subject to the lien of a prior judgment is subject to all of the consequences which may result from the divesting of his lessor's title by a sheriff's sale of the land including the leased timber sought to be used for turpentine purposes.

2. As a general rule, all motions for postponements or continuances are

Appeal and Error, 4 C. J. p. 553, n. 35; p. 809, n. 32, 39.
Continuances, 13 C. J. p. 123, n. 14; p. 149, n. 56; p. 174, n. 39 New.
Injunctions, 32 C. J. p. 21, n. 8.
Logs and Logging, 38 C. J. p. 240, n. 36 New.

addressed to the sound discretion of the court; and it is not error for the court, upon an interlocutory hearing upon a petition for an injunction, to grant either of the parties proper time for an amendment of the pleadings or for the procurement of material evidence.

3. The exception to the grant of the interlocutory injunction upon the ground that the sheriff's sale in this case was equivalent to a private sale is without merit, because it is based upon an assumption of fact which is not authorized by the record.

4. The trial judge did not err in granting a temporary injunction.

No. 5943. JANUARY 12, 1928.

Injunction. Before Judge Daniel. Tattnall superior court. February 18, 1927.

*H. H. Elders,* for plaintiff in error.

*Anderson & Trapnell,* contra.

RUSSELL, C. J. Abe Evans and H. M. Cobb filed a petition for injunction and damages against W. S. Mosely, alleging that they were the holders of a perfect fee-simple title to a tract of land in Tattnall County, described in the petition; that Mosely is working the timber thereon for turpentine, and refuses to discontinue his operations; that he has no title or valid claim to the timber, although he has informed the petitioners that he is proceeding on a lease made to him by Lonnie Kennedy in December, 1925; that the damages are irreparable; and that the petitioners are without any adequate remedy at law. Upon presentation of the petition the judge of the superior court issued a rule nisi and a temporary order restraining the defendant Mosely from "dipping the gum from, raking or weeding around, or in any otherwise working the timber mentioned in this petition." This order contained a provision that "the hearing be had by affidavits and such documentary evidence as parties desire to offer." At the appointed time for hearing both sides announced ready without any affidavits, but the petition and answer, both of which were verified, were submitted as evidence, as well as a deed from J. Henry Kennedy, sheriff, to Bank of Collins, dated December 7, 1926, and recorded December 8, 1926; a deed from the Bank of Collins to the petitioners, Abe Evans and H. M. Cobb, executed December 28, 1926, and recorded December 30, 1926; and a fi. fa. in favor of the First National Bank of Vidalia against Lonnie Kennedy et al., dated March 29, 1922, and recorded on the general execution docket of Tattnall County on July 1, 1922, for $1250, besides interest and costs, which execution was levied upon the land in

question on October 7, 1925, and sale under said levy was made on December 7, 1926. In his answer the defendant says that petitioners do not hold a fee-simple title to the land or the timber, because they did not get a deed until December 28, 1926, and defendant claims only a leasehold right in the turpentine privileges for three years from December 10, 1926, on which date he bought a four-year lease of the turpentine timber for $600, which was recorded on the same day in the office of the clerk of the superior court. The $600 represented $150 per year, and defendant has used it but one year and has $450 invested in the use of said timber for three years; and this was purchased from Lonnie Kennedy when he owned said place, was in possession thereof, was living on it, and had a right to sell.

The defendant by way of further plea alleges: (1) The Bank of Collins bought the land for $1750, which paid the oldest judgment against Lonnie Kennedy, which was the one in favor of the First National Bank of Vidalia, and left a balance of $93.65 and the same was paid over by the Bank of Collins to the Bank of Reidsville on an execution that was not recorded in said county until December 1, 1926. The lease taken by defendant was on record about one year before the record of the fi. fa. of the Bank of Reidsville; the total amount, in round numbers, of the judgment of the Bank of Reidsville was $1000 on the day the land was sold; the Bank of Collins had a judgment against Lonnie Kennedy that was put on record November 24, 1925, for approximately $1000; since the sale of said land the Bank of Collins has paid in full to the Bank of Reidsville its judgment against Lonnie Kennedy, and has also paid in full its own judgment against Lonnie Kennedy, and has paid Lonnie Kennedy $317 beyond these payments as the balance of the purchase-price of said land. The $4650 alleged to have been paid by the plaintiffs to the Bank of Collins is the amount the Bank of Collins paid Lonnie Kennedy for said place. Defendant charges that there was an understanding between the Bank of Collins and Lonnie Kennedy that the bank would buy the place as cheaply as possible, but would make it pay the three judgment creditors and then as much over for him as they could; and that the plaintiffs to this suit knew of this agreement. At the time he took his lease of the turpentine timber there were but two liens against said land, the one in favor of the First

National Bank of Vidalia and the one in favor of the Bank of Collins. The place has been sold since then, and both of said liens were paid off in full by the purchaser of said place; and therefore the lease is now certainly good. "No one can dispute that the legal and equitable title to said land was in Lonnie Kennedy the day he made said lease, and said land had only two execution liens against it, and both of them have been paid in full. If the plaintiffs were not a party to the deal between the Bank of Collins and Lonnie Kennedy, then they had constructive and legal notice of the lease of the defendant, for the same had been on record for more than a year before they bought said place. If they did have knowledge of this deal referred to above, then they are bound by the same; and they can not say that they bought said place with knowledge that said lease was not good because the sale of the place had not paid the liens on said place at the time the lease was made. The party from whom the plaintiffs bought this land is entirely solvent, and it warranted the title to the plaintiffs, and they should look to it for their damages if they have any." (2) For further plea the defendant says that the plaintiffs have a remedy at law to sue the Bank of Collins on its warranty to them, or to sue the defendant for damages, and said damages are not irreparable. The value of the trees the defendant is to work for the next three years is capable of computation, and he is amply able to respond in damages. (3) For the reasons just set out, and for the equity and justice of the matter, he ought to be allowed to give such bond as the court may require, and go on and work the boxes; and he offers to give such bond. He prays that the Bank of Collins be made a party defendant and required to answer under oath just what its trade and agreement was with Lonnie Kennedy and the plaintiffs. In addition to his sworn answer the defendant introduced in evidence a turpentine lease made to him by Lonnie Kennedy on December 5, 1925, and recorded on the same day, conveying to defendant all the turpentine privileges on the land in question, for a period of four years.

After argument for both parties, counsel for the petitioners asked the court for time to get up affidavits in reply to the defendant's answer, which time was granted. A week later counsel for the petitioners notified counsel for the defendant that more time had

been asked in which to amend the petition and set up an abstract of title, and that the court had granted more time for that purpose; it being stated in the bill of exceptions that "counsel for defendant had no opportunity to object to the second continuance." Thereafter petitioners presented to the court an amendment with an abstract of title attached, and set forth the additional allegations that the action of the defendant, unless restrained, would constitute a continuing trespass, giving rise to a multiplicity of suits; that the trees worked for turpentine would be thereby weakened and rendered more susceptible to deterioration and destruction by storms and worms, which damage would be impossible of computation and therefore irreparable. The petitioners made affidavit that they purchased the land in question on December 28, 1926, for $4650, in good faith, and were not parties to any agreement between Lonnie Kennedy and the Bank of Collins or any other person, regarding the purchase of the land at sale by the sheriff, and they had no knowledge of any such agreement if any such existed; that they had no intention of purchasing said land until December 22, 1926, when Evans was approached by J. H. Williams, acting for the Bank of Collins, with a proposition to sell the land, and petitioners did not know what that bank did with the money paid to it by them for said land.

The defendant asked for time in which to amend his answer to meet the amendment of the plaintiffs, and to submit some affidavits for the defendant in reply. The court granted this request; and the defendant presented his sworn amendment and offered the same as evidence, as well as the affidavits of D. E. Lynn, Lonnie Kennedy, and R. H. Kennedy. Lynn testified that since the beginning of this suit he talked with one of the plaintiffs, Abe Evans, and he told him that he owned stock in the Bank of Collins and had for some time previous. The affidavit of Lonnie Kennedy was as follows: "That the place in question was sold under a fi. fa. and judgment in favor of the First National Bank of Vidalia; that the Bank of Collins helped him arrange with the First National Bank of Vidalia and the Bank of Reidsville and the Bank of Collins, so that the sale of said place would pay the three judgments and save something for himself; that the place was sold and all three judgments paid off in full, and he received $33 above the payment of the three judgments; that the judgment

in favor of the Bank of Reidsville was put on record long after the lease made by him to W. S. Mosely was recorded; that the Bank of Collins paid off the judgment to the Bank of Reidsville; that the Bank of Collins knew he had made the lease to the said Mosely, and that he had paid me for the same, and that the same was recorded, and that Mosely had worked said trees for one year under his lease; that it was the understanding with the Bank of Collins that it would see that the three judgments were paid off against me; that Mosely paid me a little over a year ago $600 for a four year's lease on said timber in question." The affidavit of R. H. Kennedy is to the effect that Abe Evans, one of the plaintiffs, talked with him since he bought the land, and told him that the Bank of Collins promised, at the time he bought, that the bank would not let him lose anything because of the W. S. Mosely lease or any other cause, from which affiant learned that Evans traded for the place with knowledge of the lease.

The petitioners introduced another affidavit, in brief, as follows: The defendant W. S. Mosely claims the right to work the timber in question for turpentine purposes until December 10, 1929, and has said he was going to do so. In pursuance of his claim he sent several hands upon said land on January 10, 1927, and began raking around the trees and dipping the gum therefrom. In working the timber the trees are chipped once a week. If the timber is worked each week, such working will constitute continuing acts of trespass, thereby causing a multiplicity of suits as the only remedy of damages for the plaintiffs. The working of the timber bleeds the sap from the trees, retards their growth, kills a portion of them, and renders the others more susceptible to storms, which renders the damages impossible to compute and therefore irreparable. They introduced deeds from H. J. McGee, administrator, to J. P. Collins, dated January 5, 1892, and a transfer of said deed by J. P. Collins back to H. J. McGee, dated the same day, both deed and transfer being upon valuable consideration, both recorded on June 21, 1897, and conveying the land in question; also deed from H. J. McGee to W. H. Kennedy, conveying the land in question, dated January 8, 1897, and recorded June 22, 1897; also deed from W. H. Kennedy to Lonnie Kennedy, conveying the land in question for a valuable consideration, dated May 23, 1913, and recorded September 23, 1913.

The court granted a temporary injunction against the defendant, but required the plaintiffs to give a bond in the sum of $1000 to pay any damage sustained by the defendant. The defendant excepted, assigning error upon the ruling just stated, and upon the overruling his objection to the allowance of additional time to the plaintiffs in which to procure evidence in reply to his answer. He contends that the agreement between Lonnie Kennedy and the Bank of Collins, under which the land was sold, amounted to the same thing as if the said bank had privately bought the land.

1. As appears from the foregoing statement, the plaintiff in error is endeavoring to continue to operate a turpentine farm which he leased for four years from December 10, 1925, to December 10, 1929, from Lonnie Kennedy, when it appears from the undisputed evidence that at the time the lease was executed there was outstanding upon the general execution docket, and of record since July 1, 1922, a fi. fa. against Lonnie Kennedy in favor of the First National Bank of Vidalia, amounting to $1750, which had been levied upon the land in question on October 7, 1925, more than two months prior to the execution of the lease. As appears from the answer of the defendant, there had been upon record since November 24, 1925, a judgment amounting "in round numbers" to $1000 in favor of the Bank of Collins. At the time of the execution of the lease the defendant had constructive notice of these two existing liens amounting to over $1750, and he bought subject to them. In the event of a sale by the sheriff, any interest in the land acquired after the record of the fi. fas. would be divested in favor of a purchaser at the sheriff's sale. The claim of the defendant was inferior to the judgments against Lonnie Kennedy, and he could only be saved by participation in the sheriff's sale as a bidder and paying for the property enough to discharge the prior liens. Conceding, but not deciding, that had there been evidence of such a nature as to plainly show that the sale was fraudulent, it might for that reason have been set aside, the agreement alleged to have been made between Lonnie Kennedy and the Bank of Collins is not of that character, and does not in any wise impeach the validity of the sale at which the Bank of Collins as the highest and best bidder purchased the land for $1750. There was no privity of any kind between the plaintiff in fi. fa. and the Bank of Collins; and the bank, after purchasing the

land, had the right to sell it as it pleased, and dispose of the proceeds of the sale as it wished. The fate of the plaintiff in error is not in any wise different from that which would befall any person buying land or any interest therein which was subject to properly recorded fi. fas. and under levy to be sold by a sheriff. The land was sold under fi. fa. in favor of the First National Bank of Vidalia, and the purchaser, whoever he may have been, obtained all the rights appertaining to the Bank of Vidalia as senior judgment creditor.

2. There is no merit in the exceptions to the action of the court in allowing time to the plaintiffs to amend their petition by attaching an abstract of title, and in giving the plaintiffs time to procure and serve the defendant with copies of affidavits in response to his answer. The postponement or continuance of a cause is within the discretion of the court, and the exercise of this discretion will not be interfered with where there is plainly no abuse of discretion. The court in this case later extended the same privilege to the defendant that he had previously granted to the plaintiffs.

3. The third headnote requires no elaboration.

4. There was no error in the order of the trial judge granting a temporary injunction. The facts presented a strong reason for maintaining, as the court did, at least the status quo, by preventing further turpentine operations, and the rights of the defendant were fully protected by the requirement that the plaintiffs give bond to pay him his damages, if any.

*Judgment affirmed. All the Justices concur.*