### 29417. PUBLIC FINANCE CORPORATION *et al. v.* THE STATE.

DECIDED JULY 16, 1942.

*Lokey & Bowden,* for plaintiffs in error.

*Bond Almand, solicitor, John A. Boykin, solicitor-general, Durwood T. Pye,* contra.

MacIntyre, J. Public Finance Corporation, J. H. Delaney, and George C. Thompson were convicted of having charged interest on a loan of money at a rate greater than five per cent. per month. The certiorari was overruled and the defendants excepted.

One of the reasons on which the laws of usury are based is that the creditor shall not avail himself of the necessitous condition of his debtor to exact of him burdensome and oppressive terms. The law mercifully restrains both the power and the cupidity of the creditor, by limiting interest on loans and all contracts to a moderate fixed rate of interest, and to insure against cruel exactions

makes lawful interest irrecoverable if more is contracted to be paid. The British and American lawmakers, instead of attempting to specify all the cases wherein usury may be found to exist, have laid the axe at the root of the tree by making all shifts, devices and pretenses by which usury is reserved subject to the law of usury, the legislatures seeking by such guarantees to reach any case when it is within the intention of the parties to pay and receive more than lawful interest. The language of our statute is very general and comprehensive. "Usury is the reserving and taking, or contracting to reserve and take, either directly or by indirection, a greater sum for the use of money than the lawful interest." Code § 57-102. "Whoever shall violate section 57-117, forbidding the charging of interest at a greater rate than five per cent. per month, shall be guilty of a misdemeanor." Code § 57-9901. The legislature has charged the courts in this way with the duty of preventing usury. *Troutman* v. *Barnett,* 9 *Ga.* 30.

The evidence showed that certain individuals obtained money from the defendants, one instance being a loan of $10 (from which twenty cents was deducted as interest at the time of making the loan, leaving $9.80 in money to the borrower) which was to be paid in twelve weekly installments of $1.20 each. This would amount to $14.40, and *would make the use of $9.80 for twelve weeks cost the borrower $4.60.* The defendants contended that their method of operation was merely to act as a broker to obtain the money from various third parties; that they did not lend any of the corporation's money, but advanced money to the borrower while a third party was passing on the loan application; and in case the loan was refused the borrower was to return the money advanced to the defendants; that on a $10 loan as above outlined twenty cents was deducted as interest for the third party, while the remainder of the money, $4.40, was a brokerage fee for defendants; and that all loans in which defendants acted as "broker" were guaranteed by defendants for the benefit of the third parties making the actual loans. On the other hand the State contends that while it is true that the contentions of the defendants are supported by the papers in the case, that is, the papers prepared by the defendants which they caused their alleged victims to sign before getting the money, it is also true that the oral testimony authorized the jury to find that the form of these papers was a scheme

and device to cover the real purport of the transaction, which was to lend money at usurious rates of interest. The State contends that while Brooks could read and write, when he went to the office of the defendants and made application to the defendants for the loan defendants told him he could get the loan, and handed him certain papers to sign which he did not read but signed immediately and returned to defendants. The money was taken from the cash drawer in the defendants' office and then and there delivered to Brooks. Brooks testified that he knew no one in the transaction except the defendants, and on at least one occasion the defendants gave him a receipt on what appears to be an advertising card and on which appears the words "Personal loans, $5 and up. $1 per week repays $5 loan; $1.20 per week repays $10 loan. One to three months to pay. Other amounts at same rate. Quick, confidential, courteous. Low rates. Avoid waiting. Telephone your application." This was signed by defendant Public Finance Corporation, giving their office number, telephone number, and hours for doing business. On another occasion Brooks received his receipt on the back of a card, about the size of an ordinary business card, which contained the words "Public Finance Corporation Personal loans," and gave the office number and telephone number. There was nothing on either of the above-mentioned cards to indicate that the defendants were brokers. The receipts for payments made on the transaction were all signed by the defendant corporation or its agent, and there was nothing on the receipts to indicate that any third person had anything to do with the transaction, nor did the defendants ever tell or indicate to Brooks, other than the papers which Brooks signed and immediately returned to the defendants at the time he obtained the loan, that any one other than the defendants had anything to do with the loan. Every payment of any kind or character Brooks ever made on the loan was to the defendants. Brooks testified that he thought he was dealing with the defendants alone throughout the entire transaction. The evidence disclosed several other similar transactions which operated under a like scheme and device for the purpose of collecting usury. We think the jury were authorized to find that what the defendants intended to do, and did do, was to violate the law as set forth in the indictment, and that when the writings, which were only a part of the lenders' scheme to cover

638

up, were considered together with the oral testimony, the whole evidence and the defendants' statements, were sufficient to show that the defendants were guilty as charged. *Gunnels* v. *Atlanta Bar Asso.*, supra; *Harris* v. *State*, 45 *Ga. App.* 477 (165 S. E. 331); *Crowe* v. *State*, 44 *Ga. App.* 719, 722 (162 S. E. 849); *Knight* v. *State*, 64 *Ga. App.* 693 (14 S. E. 2d, 225).

Judgment affirmed. *Broyles, C. J., and Gardner, J., concur.*