S99Q1187. GLINTON et al. v. AND R, INC. et al.
(524 SE2d 481)

THOMPSON, Justice.

Plaintiffs borrowed money from Georgia pawnbrokers at interest rates which exceeded five percent per month. Asserting the transac-

---

tions were illegal and void because they violated the criminal usury statute, OCGA § 7-4-18,[1] plaintiffs brought suit against the pawnbrokers in the United States District Court for the Northern District of Georgia. The pawnbrokers moved to dismiss the complaint on the ground that the transactions are controlled by the statute regulating pawnbrokers, OCGA § 44-12-131, not the criminal usury statute. The district court agreed with the pawnbrokers and granted their motion to dismiss the complaint. Plaintiffs appealed to the United States Court of Appeals for the Eleventh Circuit, which certified the following questions:

> A. Can the statutory scheme regulating pawnbrokers, be read harmoniously with the criminal usury statute, OCGA § 7-4-18, so that both apply to "pawn transactions" as defined in OCGA § 44-12-130 (3), or are such transactions meant to be governed exclusively by OCGA § 44-12-130, 131?
> B. Is the permissible rate of interest and fees charged in "pawn transactions" as defined in OCGA § 44-12-130 (3) governed solely by OCGA § 44-12-131, or does the criminal usury statute, OCGA § 7-4-18, apply to modify allowable charges so that the interest charged in these transactions violates Georgia law?

Before we examine the pawnshop statute and the criminal usury statute,

> [W]e first note that § 7-4-18 is a criminal statute. It thus must be construed strictly against criminal liability and, if it is susceptible to more than one reasonable interpretation, the interpretation most favorable to the party facing criminal liability must be adopted. [Cits.] This rule applies even though a criminal statute is being construed in a civil context. [Cits.]

---

[1] Subsection (a) of this Code section provides:
Any person, company, or corporation who shall reserve, charge, or take for any loan or advance of money or forbearance to enforce the collection of any sum of money, any rate of interest greater than 5 percent per month, either directly or indirectly, by way of commission for advances, discount, exchange, or the purchase of salary or wages; by notarial or other fees; or by any contract, contrivance, or device whatsoever shall be guilty of a misdemeanor; provided, however, that regularly licensed pawnbrokers, where personal property is taken into their actual physical possession and stored by them, may charge, in addition to said rate of interest, not exceeding 25¢ at the time the property is first taken possession of by them for the storage of said property.

*Fleet Finance v. Jones*, 263 Ga. 228, 231 (3) (430 SE2d 352) (1993). Keeping this rule in mind, we look to see whether the pawnshop statute and the criminal usury statute can be read harmoniously, or whether they conflict. We conclude that these statutes cannot be reconciled and that, when it comes to pawn transactions, the criminal usury statute is inapplicable.

We begin our analysis with the observation that nothing in the pawnshop statute indicates that the legislature intended for interest on pawn transactions to be limited to five percent per month. The plain language of the statute addresses interest and pawnshop fees in the aggregate, regardless of how the interest and fees are characterized and apportioned:

> During the first 90 days of any pawn transaction or extension or continuation of the pawn transaction, a pawnbroker may charge for each 30 day period interest and pawnshop charges which together equal no more than 25 percent of the principal amount advanced.

OCGA § 44-12-131 (a) (4) (A). Thus, on its face, the pawnshop statute permits finance charges, which can consist of any combination of interest and pawn charges, at 25 percent per month for the first 90 days of the transaction.

Had the legislature intended to cap pawnshop transaction interest at five percent per month or less, it could have done so. In fact, the previous version of the pawnshop statute did just that. 1989 Ga. L. 819, 821. Differentiating between interest and charges in pawnshop transactions, that statute capped pawnshop interest at two percent per month and provided that the "pawnshop charge" could not exceed "one-fourth of the principal amount, per month, advanced in the pawn transaction." Id.

Furthermore, in the current statutory scheme, a pawnshop can charge "additional interest" of 12.5 percent if a consumer wishes to redeem pledged goods within a 30-day grace period. OCGA § 44-14-403 (b) (3). This provision does not use the term "pawnshop charges" at all, and dispels the notion that the legislature intended for pawnshops to be governed by the criminal usury statute. After all, the 12.5 percent interest rate permitted in this instance is clearly at odds with our criminal usury law.[2]

Where statutes are in conflict, later statutes prevail over earlier

---

[2] The statutes conflict in other ways as well. For example, the pawnbroker statute allows a pawnshop to charge a storage fee of $5.00 per day for a motor vehicle. OCGA § 44-12-131 (a) (4) (C) (ii). The criminal usury statute, on the other hand, limits the storage fee to 25¢ per transaction. OCGA § 7-4-18.

statutes, *Copeland v. State*, 268 Ga. 375, 379 (490 SE2d 68) (1997); and specific statutes govern over more general statutes, *Ga. Mental Health Institute v. Brady*, 263 Ga. 591, 592 (2) (436 SE2d 219) (1993). The pawnshop statute was enacted long after the criminal usury statute and it is more specific than the criminal usury statute. Thus, it is the pawnshop statute, not the criminal usury statute, which governs pawn transactions.

*Questions answered. All the Justices concur, except Benham, C. J., dissenting, and Hunstein, J., not participating.*

BENHAM, Chief Justice, dissenting.

I respectfully disagree with the majority's conclusion that OCGA § 7-4-18, the criminal usury statute, and OCGA § 44-12-130 et seq., the pawnbroker statute, are in irreconcilable conflict such that the former cannot apply to pawn transactions. On the contrary, I believe the statutes can and must be read in harmony with one another. "When the courts are called upon to determine if there is a conflict between statutes they are required to undertake to construe them together and seek to give full effect to both laws as representing all of the legislative intention. [Cit.]" *Fulton County v. Corp. &c. of Latter Day Saints*, 133 Ga. App. 847, 851 (212 SE2d 451) (1975). I believe that fulfillment of that appellate duty by going beyond apparent facial inconsistency and performing a penetrating analysis results in a reasonable interpretation which harmonizes the two statutes at issue in this case: the pawnbroker statute's ceiling on the monthly "interest and pawnshop charges . . . together" consists of two elements, a maximum five percent per month interest (the limitation put in place by the criminal usury statute), and a charge for expenses incurred by the pawnshop in connection with the transaction, the sum of which elements cannot exceed 25 percent.[3] That straightforward reading of the two statutes together accomplishes the intent of the legislature in enacting both statutes.

It is reasonable to conclude that the statutes may be read harmoniously after studying the current version of OCGA § 44-12-130 et seq. and its pre-1992 precursor. The 1989 version of § 44-12-130 et seq. limited pawnbrokers to charging two percent per month interest and permitted pawnbrokers to assess "pawnshop charges," i.e., charges for "all services, expenses, costs, and losses of every nature whatsoever," in an amount up to 25 percent of the loan amount monthly. 1989 Ga. L. 819, § 2. The 1992 amendment removed the two percent per month limitation on interest chargeable by a pawnbroker, but retained a ceiling on the amount a pawnbroker might

---

[3] The 25 percent per month cap is applicable to the first 90 days of the transaction, and is reduced to 12.5 percent thereafter. OCGA § 44-12-131 (a) (4) (A) & (B).

impose by providing that the total amount of interest and pawnshop charges together may equal no more than 25 percent per month of the principal. 1992 Ga. L. 3245, § 3. The majority opinion views the deletion of the two percent interest ceiling as authorizing a pawnbroker to charge a monthly interest rate of 25 percent. On the other hand, it is unreasonable to believe that the General Assembly intended to enact legislation that changed the interest rate a pawnbroker could charge from two percent per month to a maximum of 25 percent per month.

A judicial search for the meaning of the 1992 legislative amendment begins with the premises that all statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it; that statutes are to be construed in connection and in harmony with the existing law; and that the meaning and effect of statutes will be determined in connection with the common law, the Constitution, other statutes, and the decisions of the courts. *Buice v. Dixon*, 223 Ga. 645, 647 (157 SE2d 481) (1967). At the time the legislature amended OCGA § 44-12-130 et seq. in 1992, the criminal usury statute was in effect, making it a misdemeanor for any entity loaning or advancing funds to charge a rate of interest greater than five percent per month. OCGA § 7-4-18 (a). A "pawnbroker," statutorily defined in the 1989 and 1992 versions of OCGA § 44-12-130 as "any person engaged in whole or in part in the business of lending money on the security of pledged goods . . . ," and a "pawn transaction," statutorily defined in both versions as "any loan on the security of pledged goods . . . ," fall by definition clearly within the criminal usury statute's coverage. That the criminal usury statute applies to pawnbrokers and pawn transactions is made clearer by the statute's direct reference to pawnbrokers in the lone exception to the prohibition of an interest rate greater than five percent per month: "regularly licensed pawnbrokers" are permitted to charge a minimal storage fee "in addition to said rate of interest. . . ." See also *Fryer v. Easy Money Title Pawn*, 183 B.R. 322, 325 (S.D. Ga. 1995). When the 1992 amendment to OCGA § 44-12-130 et seq. is viewed in the context of the criminal usury law and the definitional aspects of the pawnbroker statute then existing, it is clear that the removal from OCGA § 44-12-130 et seq. of the two percent per month limitation on the interest a pawnbroker might charge was not done in a vacuum: the criminal usury law's prohibition of an interest rate greater than five percent per month filled the void left by the removal of the two percent per month ceiling.

Thus, the two statutes may be read harmoniously by understanding that the 25 percent per month cap of OCGA § 44-12-131 (a) (4) (A) consists of a maximum five percent per month interest, which is the limit imposed by the criminal usury statute, and "pawnshop

charges" which together with interest may be no more than 25 percent of the principal amount of the transaction. Construed together in that fashion, the two statutes provide a basis for a process to determine whether the interest charged in a particular transaction is within the five percent limit of the criminal usury statute.

Because the statutory cap on the amount a pawnbroker may charge is stated as the combination of "interest" and "pawnshop charges," the process of calculating the amount of interest involved in the transaction consists of identifying the "pawnshop charges" and then subtracting the total of those costs from the total amount charged per 30-day period. Essential to this calculation is a determination of what constitutes "pawnshop charges." The absence of a statutory definition does not render this determination impossible because the legislature's intent in using that phrase is discernible from consideration of the statute as a whole. "In construing a statute, the cardinal rule is to glean the intent of the legislature. [Cits.] Language in one part of the statute must be construed ' "in the light of the legislative intent as found in the statute as a whole." ' [Cit.]" *Alford v. Pub. Svc. Comm.*, 262 Ga. 386 (1) (a) (418 SE2d 13) (1992). Applying that rule in construing "pawnshop charges" as it appears in § 44-12-131 (a) (4) (A) and (B), we need look no further than the additional charges a pawnbroker may impose under the authority of § 44-12-131 (a) (4) (C) through (E). In those subparagraphs, the legislature set out certain charges pawnbrokers may impose which need not be included in the 25 percent cap on interest and pawnshop charges combined. The connecting link between those charges is that each represents an expense incurred by the pawnbroker in connection with the transaction at issue: registration fees; storage fees; repossession fees; mailing costs; and pawn ticket replacement costs. It is reasonable, therefore, to assume, in the absence of contrary definition, that the legislature intended the word "charges" to have the same meaning throughout § 44-12-131 (a) (4). *Alford v. Pub. Svc. Comm.*, supra. That being so, "pawnshop charges," as used in § 44-12-131 (a) (4) (A) and (B) must also be read to refer to expenses incurred by a pawnbroker (other than those listed in subsections (C) through (E)) in connection with the transaction at issue.

Having determined what comprises "pawnshop charges," the calculation is simple: subtract the expenses incurred by the pawnbroker in connection with the transaction at issue from the total monthly charge. The result is the amount of interest charged monthly in connection with the transaction, i.e., the amount charged for the extension of credit. *Norris v. Sigler Daisy Corp.*, 260 Ga. 271 (392 SE2d 242) (1990). If that amount exceeds five percent of the amount advanced to the borrower, the monthly interest charge violates the criminal usury statute, OCGA § 7-4-18.

From the reasoning set forth above, it is apparent that there exists an interpretation of the two statutes which is internally consistent and gives effect to both. Such a construction is in keeping with our duty as an appellate court confronted with statutes which may be susceptible of more than one interpretation to ascribe to them an interpretation that is in keeping with the legislative intent and is most equitable and just. *Ford Motor Co. v. Abercrombie*, 207 Ga. 464, 468 (62 SE2d 209) (1959); *VSI Enterprises v. Edwards*, 238 Ga. App. 369, 374 (518 SE2d 765) (1999). That interpretation, that the legislature intended for the maximum allowable interest rate charged by pawnbrokers to be five percent per month, is reasonable in light of both the legislative history of the current pawnbroker statute and the long-standing, strong public policy against usury in this state.

An examination of the legislative history of the 1992 amendment to the pawnbroker statute reveals that a co-sponsor of the amendment stated that its purpose was to keep "interest from accruing at such a high rate for such a long period of time that the debt cannot be repaid." Pawnbrokers: Provide Comprehensive Legislation Regulating Loans on Motor Vehicle Titles, 9 Ga. St. L. Rev. 323, 326. Thus, it is clear that this legislation was passed with the intent of benefitting the consumer, rather than the pawnbroker. The interpretation suggested herein is consistent with that purpose. Under the majority's interpretation, by contrast, the consumer who formerly faced an allowable interest charge of two percent per month now stares at a crippling wall of interest charged at the rate of 25 percent per month. Permitting pawnbrokers to charge interest at that exorbitant rate, as the majority would do, directly conflicts with the legislative intent of the amendment and converts legislation intended to benefit the consumer into a tool for legitimately gouging the consumer. That is not a reasonable interpretation of the statutes.

In *McGehee v. Petree*, 165 Ga. 492 (141 SE 207) (1928), this Court stated that "[i]t is the policy of the laws of this state to inhibit the taking of usury under every and any pretense or contrivance whatsoever." See also *Dorsey v. West*, 248 Ga. 790 (285 SE2d 703) (1982); *Pub. Finance Corp. v. State*, 67 Ga. App. 635 (21 SE2d 476) (1942). The interpretation set forth in this opinion gives voice to that policy by permitting the pawnbroker statute and the criminal usury statute to mesh smoothly. Given this strong public policy against usury and our current legislative scheme designed to inhibit usury, it is highly improbable that the legislature intended, as the majority holds, for pawnbrokers to be a protected class and for the criminal usury statute to be entirely inapplicable to pawn transactions. Allowing pawnbrokers to charge as much as 25 percent interest per month – which

is equivalent to 187.5 percent per year[4] – is such a dramatic departure from the previous statute where only two percent was allowed, and from Georgia's well-established policy against usury, as to be utterly shocking to the conscience. We should not so easily assume, as the majority does, that such a reversal in policy is what the legislature intended.

The rationale leading to the majority's conclusion that the legislature did not intend for pawn transactions to be held in check by the usury statute is based on three flawed premises: that the legislature could have capped pawnshop interest at five percent per month if it wished to; that the 1992 amendment permitting a pawnbroker to charge an additional sum upon default (OCGA § 44-14-403 (b) (3)) evidences an intent to free pawn transactions of the usury statute; and that a conflict exists between the pawnbroker statute's authorization of a $5.00 per day storage fee on repossessed automobiles, and the criminal usury statute's allowance of a 25¢ storage fee on each transaction.

First, as noted above, it is reasonable to assume that the legislature felt no need to specify the permissible rate of interest in the amended pawnbroker statute because the criminal usury statute already provided the five percent monthly limitation. By contrast, the 1989 version of the pawnbroker statute provided an express limit on interest because the legislature chose a limit different than that permitted by the criminal usury statute.

Second, the majority's reliance on the provision for "additional interest" in OCGA § 44-14-403 (b) (3) is unsound because that statute deals with debtors in default, a situation not even discussed under the criminal usury statute. It is reasonable that lenders be entitled to additional fees once debtors have failed to meet their obligations. While the use of the word "interest" in that context is potentially misleading, the fee permitted by § 44-14-403 (b) (3) is clearly not a charge merely for the loan of money and legislative permission to charge such a fee is not, as the majority suggests, "clearly at odds with our criminal usury law."

Third, contrary to the majority's assertion, there is no irreconcilable conflict between the storage fee authorized by the pawnbroker statute and that authorized by the criminal usury statute: the former permits a pawnbroker to charge an additional $5.00 daily fee for stor-

---

[4] As noted in fn. 1, only the first three months of the transaction are subject to the 25 percent per month cap, and the rate for the succeeding months is limited to a 12.5 percent cap on interest and pawnshop charges together. OCGA § 44-12-131 (a) (4) (A) & (B). Thus, for a 12 month period, the allowable interest and pawnshop charges together would be 75 percent of the principal for the first three months and 112.5 percent of the principal over the next nine months, totaling 187.5 percent for a year.

ing an *automobile* that has been repossessed following the debtor's default after the pawn transaction has begun, while the latter established a basic charge for the cost of storing pawned property given into the keeping of the pawnbroker at the time of the pawn transaction. A reasonable interpretation of those provisions is that the more recent specific statute supplements the older general statute.[5]

Thus, as is set out above, there is no irreconcilable conflict between the statutes governing pawn transactions and the criminal usury statute. For that reason, the questions posed by the Eleventh Circuit Court of Appeals should be answered as follows: the statutory scheme regulating pawnbrokers and the criminal usury statute are to be read harmoniously so that both apply to pawn transactions; and the criminal usury statute applies to limit the interest charged on pawn transactions. Since the majority reaches a different conclusion, I respectfully dissent.

DECIDED DECEMBER 2, 1999 —
RECONSIDERATIONS DENIED DECEMBER 17, 1999 AND DECEMBER 20, 1999.

*Parks, Chesin & Miller, Harlan S. Miller III, David C. Ates, Gerard J. Lupa,* for appellants.

*Wetzel & Associates, Michael L. Wetzel, Bondurant, Mixson & Elmore, H. Lamar Mixson, Jill A. Pryor, Neeli Ben-David, Robert H. Putnam, Jr., Troutman Sanders, Alan W. Loeffler, Holland & Knight, Harold T. Daniel, Jr., Laurie W. Daniel, Caroline J. Tanner, Smith, Gambrell & Russell, Stephen M. Forte, Thomas M. Barton, Shannan L. Freeman, Fred J. Stokes,* for appellees.

*Sidney L. Moore, Jr.,* amicus curiae.

---

[5] Even if an irreconcilable conflict were to be found to exist between the storage fee provision of the pawnbroker statute and that of the criminal usury statute, the newer statute's version would prevail, but only pro tanto, i.e., the older statute is not modified or made inapplicable in its entirety, but only as to that irreconcilable conflict. *Copeland v. State of Ga.,* 268 Ga. 375 (4) (490 SE2d 68) (1997).