### 15294. JOBSON *et al.* v. MASTERS.

1. The act of 1920 (Ga. L. 1920, p. 215), authorizing persons licensed thereunder to charge and collect interest at the rate of 3½ per cent. per month on loans in sums of $300 or less, relates only to calendar months, whether the particular month for which the interest is to be computed happens to consist of 28, 29, 30, or 31 days; and if the lender charges or receives any sum whatever in excess of that authorized by the statute, the contract of loan is null and void and the lender forfeits his right to recover either the principal or the lawful interest and charges.

2. A litigant seeking to bring himself within the provisions of that act, so as to enable him to recover upon a contract stipulating to pay interest at the rate of 3½ per cent. per month, must, as conditions precedent to such alleged right, show that he was licensed in accordance with the provisions of the act, that the contract was made under such license and at the place of business designated therein, that the contract does not upon its face show any violation of the act or failure to comply with its mandatory provisions, and that at the time of the loan he delivered to the borrower the statement prescribed by section 14 of the act. In the absence of either of these essentials, a contract of loan in which the borrower agrees to pay interest at any rate higher than 8 per cent. per annum is usurious.

DECIDED APRIL 16, 1924.

Certiorari; from Fulton superior court—Judge Humphries. December 1, 1923.

Application for certiorari was denied by the Supreme Court.

S. Jay Masters instituted in the municipal court of Atlanta a bail-trover proceeding against J. B. Jobson and Mrs. Sallie Lou Jobson, to recover certain household goods. He alleged that the defendants were in possession of the property, that he claimed title thereto, and that they refused to deliver it to him or to pay him the profits thereof. The petition contained the usual prayer for process. In addition to answering the paragraphs of the petition, the defendants pleaded: "that the alleged right and title of plaintiff in the property sued for grew out of a contract or bill of sale and mortgage given by defendants to plaintiff for the purpose of securing a loan of money made by plaintiff to defendants on the 19th day of December, 1921. Under said contract of loan, defendants agreed to pay plaintiff, as interest on the amount borrowed, $3\frac{1}{2}$ per cent. per month. . . The sum originally borrowed was ᛁ . . $204, and was to be repaid in twelve equal installments of $17 each and interest as aforesaid at $3\frac{1}{2}$ per cent. per month, the amount paid at each payment on the principal to be deducted therefrom and a new principal to then run till the next payment, and interest paid on the new principal; that plaintiff charged, contracted for, and received interest and charges on said loan and the new principals aforesaid in excess of those permitted by the act of the General Assembly of Georgia, approved August 16, 1920, allowing charges of interest to be made on loans not in excess of $300 to be $3\frac{1}{2}$ per cent. per month; and that, therefore, under the terms and provisions of said act, the contract of loan and the bill of sale and mortgage to secure said loan to defendants, and in which the alleged right and title to the property sued for herein was conveyed to plaintiff, is void and of no effect, and conveys no title or rights to the plaintiff, and the plaintiff has no title to the property sued for herein and cannot recover said property." The remainder of the plea was devoted to setting out in detail the dates and amounts of the payments, which do not differ from those proved by the plaintiff upon the trial.

To prove his alleged title, the plaintiff introduced in evidence a writing, dated December 19, 1921, and signed by the defendants, the only part of which here material was as follows: "For value received, we or either of us promise to pay S. Jay Masters, or order, or bearer, the sum of two hundred four and 00/100 dollars,

the same to be paid as follows: twelve equal monthly installments of $17 on the 19th day of each month after date here (with interest thereon) at the rate of three and one-half per cent. per month on the unpaid balance as provided for in an act of the legislature approved August 16th, 1920. And to secure the payment of the same, we hereby deed, sell, and convey the following property . . [here followed a description of property as in plaintiff's petition] to the said S. Jay Masters, or order, or bearer, the said property being now at my home," etc. Annexed thereto was another writing, purporting to be a bond to reconvey the property to the defendants upon the payment of the debt as above shown. While this bond commenced, "I, the undersigned S. Jay Masters, am held and firmly bound," etc., yet the undertaking was signed only by A. B. Madison. Neither of these writings contained any recital that the plaintiff was licensed under the act referred to, nor was any evidence offered to show that he was so licensed. Except as above shown, neither of them tended to show that the debt in question was created by a loan, or, if so, the actual amount of the loan. Neither of these writings contains any recital or other indicia tending to show at what particular place of business the debt was created or the papers executed, nor was any other evidence offered tending to show these things. Plaintiff introduced in evidence also a book (which was not shown to have ever been delivered to the defendants or to have come from their possession) purporting to contain a record of the transaction in controversy, describing the above-mentioned bill of sale under the words, "Amount of loan, $204.00," on the back of which was a copy of section 13 of the above-cited act. It showed the following record of payments:

| Date paid | Interest paid | Paid on loan | Balance loan |
|---|---|---|---|
| | | | $204.00 |
| 1/19 | $7.38 | $17.00 | 187.00 |
| 2/22 | 6.98 | 17.00 | 170.00 |
| 3/22 | 5.16 | 17.00 | 153.00 |
| 4/20 | 5.18 | 17.00 | 136.00 |
| 5/23 | 5.24 | 17.00 | 119.00 |
| 7/17 | 7.64 | 17.00 | 102.00 |
| 8/21 | 4.17 | 17.00 | 85.00 |
| 9/21 | 3.07 | 34.00 | 51.00 |
| 11/16 | 3.33 | 17.00 | 34.00 |

This book nowhere contained the name or address of the plaintiff or the name or address of the person purporting to have signed the bond to reconvey the property to the defendants. It did contain the name and address of J. B. Jobson, followed by the words, "In account with Surety Loan Company," without the address of that company. A Mr. Madison, whose initials do not appear, testified as a witness for the plaintiff: that he (the witness) was manager of the Southern Security Company, and that his company represented S. Jay Masters in making the loan to the defendants, to secure which they executed the bill of sale in evidence; that he had collected thereon payments as shown by the table set out above; and that the calculation of the interest on the loan was made by a certain machine which they had in their office, which was a standard machine, used generally by loan companies, and which calculated interest on the actual number of days. In his opinion the loan was made under the above-cited act of 1920, but he stated no fact on which to base that opinion. In collecting the interest he undertook to calculate it at the rate of 3½ per cent. per month for the actual number of days between payments, instead of on the basis of the calendar month; and, so far as the table of payments set out above may indicate a contrary purpose, the figures are due to his errors in calculating the interest due at the times of the payments. The minute details of his testimony touching the separate payments are unimportant here. He further testified to a demand on the defendants for the property before suit was brought. Jobson testified only with respect to the dates and amounts of the payments as made by him, which did not differ from the table of payments set out above. The plaintiff elected to take a money judgment, and judgment in favor of the plaintiff was rendered accordingly. The exception here is to the judgment of the superior court overruling the certiorari sued out by the defendants, in which the judgment of the municipal court is assigned as error because contrary to law and the evidence, with many amplified statements of that ground of error.

*H. C. Holbrook,* for plaintiff in error.

*G. F. Fielding,* contra.

LUKE, J. (After stating the foregoing facts.) In this court counsel for both parties, by their briefs, treat the case as one coming within the provisions of the act of 1920 (Ga. L. 1920,

p. 215) "to license and regulate the business of making loans in sums of $300 or less," etc., the only question discussed by them being whether the lender charged and collected such sums of interest as to void the note and security given for the loan. In our view of the case there are other fundamental questions on which the case might turn, under the pleadings and the general assignment that the judgment of the municipal court was contrary to law and the evidence. But we will first consider the case as discussed by counsel for the parties.

1. The suit being an action of trover, it was essential that the plaintiff show title in himself to the property in controversy. It was to this end that he introduced the bill of sale in evidence. If valid and enforceable, it was sufficient for this purpose. *Watts v. Wight Investment Co.*, 25 *Ga. App.* 291 (103 S. E. 184). The defendants attack this bill of sale, contending that it is null and void, under the provisions of the small-loan act of 1920, to which the writing itself refers. They attack it not for anything that appears on its face, but because the plaintiff collected interest in excess of the maximum rate of 3½ per cent. per month allowed by that act. Section 13 of the act provides: "Every person, co-partnership and corporation licensed hereunder may loan any sum of money not exceeding in amount the sum of three hundred dollars ($300) and may charge, contract for and receive thereon interest at a rate not to exceed three and one half (3½) per centum per month. Interest shall not be payable in advance or compounded, and shall be computed on unpaid balances. In addition to the interest herein provided for, no further or other charge or amount whatsoever, for any examination, service, brokerage, commission or other thing, or otherwise, shall be directly or indirectly charged, contracted for or received, except the lawful fees, if any, actually and necessarily paid out by the licensee to any public officer for filing or recording in any public office any instrument securing the loan, which fees may be collected when the loan is made or at any time thereafter. If any interest or charges in excess of those permitted by this act shall be charged, contracted for or received, the contract of loan shall be null and void and the licensee shall have no right to collect or receive any principal, interest or charges whatsoever." By section 17 of the act it is declared that "no loan for which a greater rate of interest or

charge than is allowed by this act has been contracted for or received, wherever made, shall be enforced in this State."

In authorizing an interest charge of 3½ per cent. per month that statute deals not with days, but with months; and the word "month," as therein used, means a calendar month, whether the particular month for which the interest is to be computed happens to consist of 28, 29, 30, or 31 days. Civil Code (1910), § 5; 1 Words & Phrases (2d series), 552. It appears, from the uncontradicted evidence, that the plaintiff repeatedly collected monthly installments of interest in excess of 3½ per cent. per month; in fact, that, notwithstanding the terms of the contract and of the statute, he intentionally disregarded calendar months in all his computations of interest, endeavoring only to compute it at the rate of 3½ per cent. per month for the actual number of days between payments. He undertakes to excuse as bona fide errors of computation all excessive charges of interest appearing from that method of calculation. In view of the emphatic and unambiguous provision of the statute that "no further or other charge or amount whatsoever, for any . . thing, *or otherwise*, shall be directly or indirectly charged, contracted for *or received*," the principle announced in *Patton* v. *Bank of LaFayette*, 124 *Ga.* 965 (4) (53 S. E. 664, 5 L. R. A. 592), is not here applicable, nor do even bona fide errors of calculation seem to afford a sufficient excuse for such overcharges. Especially is this so under the peculiar facts of this case, where there was no necessity whatever for computing interest for the fractional part of a month, and where the plaintiff still retains the benefits of his admitted errors and does not appear to have ever made any effort to restore or account for the sums thus wrongfully taken. Nor is it any excuse to say that the amount of usury thus taken was small. As for that matter, the principal debt itself was small, and could in no event exceed the sum of $300. But from the date of the loan, December 19, 1921, to the date of the first interest payment, January 19, 1922, was exactly one month of 31 days. Three and a half per cent. interest on the principal debt of $204 for that month was $7.14. The amount of interest collected was $7.38, or an excess of 24 cents. Small as that may seem, a similar excessive charge for each month during the twelve months period involved would amount to more than one per cent. per annum on the entire prin-

cipal debt for the year. For the second month the plaintiff appears to have collected 43 cents in excess of the maximum rate of interest allowed by the act in question, this excess alone amounting to almost as much as one month's interest at the rate of 3 per cent. per annum on the principal debt of $187 then outstanding. Other monthly collections of interest show overcharges, while some of them show undercharges; but if further details are desired, the table set out above affords a sufficient basis therefor.

The question then is: What effect, if any, do such overcharges have on the bill of sale as evidence of plaintiff's alleged title? The small-loan act of 1920 allows of but one answer. While it allows to lenders of small sums who comply with its provisions the unusual privilege of charging and collecting interest thereon at the rate of 3½ per cent. per month, or 42 per cent. per annum, where other persons are allowed only 8 per cent. per annum, it also provides the unusual penalty of forfeiture of both principal and interest for one who undertakes to do business under its provisions and who, in any manner whatsoever, contracts for *or receives,* either directly or indirectly, any thing whatsoever in excess of its provisions for money thus loaned. In the language of the act: "If any interest or charges in excess of those permitted by this act shall be charged, contracted for, or received, the contract of loan shall be null and void, and the licensee shall have no right to collect or receive any principal, interest or charges whatsoever." It necessarily follows that the plaintiff was not entitled to recover.

2. Aside from such excessive charges of interest, does the plaintiff show any right to charge or collect interest even at the rate of 3½ per cent. per month in accordance with the provisions of the small-loan act of 1920? From section 1 of that act it emphatically appears that the privilege of charging such a high rate of interest is allowed only to those who are bonded and licensed in accordance with the subsequent sections of the act. In this case the plaintiff failed to show that he was such a licensee. Proof of that fact, if it is a fact, was necessary to bring him within the prospective provisions of the act and establish his right to the rate of interest claimed by him; in short, it was essential to his case, since the payments as made amount to more than enough to cover the principal debt and interest thereon at the rate of 8 per cent. per annum.

Again, by section 8 of that act it is provided: "No person, co-partnership or corporation so licensed shall make any loan provided for by this act under any other name or at any other place of business than that named in the license. Not more than one place shall be maintained under the same license, but the licensing official shall issue more than one license to the same licensee upon the payment of an additional license fee and the filing of an additional bond for each license." While the debt in question was payable to "S. Jay Masters, or order, or bearer," yet it appears from the evidence that the contract was negotiated for him by the Southern Security Company, through its manager. Not only is it a matter of doubt as to which of them, if either, is a licensee under the act of 1920, but the evidence utterly fails to disclose at whose place of business the loan was made. In order to come within the terms of the act, the loan must have been made at the place of business named in the license issued to the licensee; and since this loan was made in the name of S. Jay Masters, and a licensee cannot lawfully make such a loan in any name other than his own, it was essential to the plaintiff's case to show that he was a licensee, and that the loan was made at his authorized place of doing such business. Without such proof the payments made are ample to cover the principal debt and interest thereon at 8 per cent. per annum. Section 14 of the act of 1920 provides, in part, that "Every licensee shall deliver to the borrower at the time the loan is made a statement . . showing . . the name and address . . of the borrower and of the licensee." The document introduced in evidence by the plaintiff to establish his compliance with this provision does not contain his own name or the name of the Southern Security Company, or the address of any other person or concern, as such lender. It does state the name and address of one of the defendants "In account with Surety Loan Company." For this reason also the plaintiff failed to bring himself within the terms of the small-loan act of 1920, or establish his authority to collect interest at a rate in excess of 8 per cent. per annum. Whether the plaintiff sufficiently showed a compliance by him with the other provisions of that act need not be here considered.

The act as a whole is unusually free from ambiguities; and, as was said by Judge Nisbet in the opinion in *Neal* v. *Moultrie,* 12

*Ga.* 110 : "The exclusion of interpretation, where none is needed, may be stated to be, notwithstanding the absurdity which it involves, the *first rule of construction.*" In *Badger* v. *Slate,* 154 *Ga.* 443 (114 S. E. 635), this act was held to be constitutional as against the several attacks there made upon it. The question now presented for decision is whether it makes or destroys the plaintiff's case as proved by him upon the trial in the municipal court. And we hold that every person who seeks to bring himself within the provisions of the small-loan act of 1920, so as to be authorized to enforce a contract for interest at the rate of 3½ per cent. per month, must, as conditions precedent to such alleged right, show (1) that he was a licensee under this act, (2) that the contract sought to be enforced was made under such license and at the place of business therein designated, (3) that the contract does not upon its face show any violation of this act or failure to comply with its mandatory provisions, and (4) that he delivered to the borrower at the time of the loan the statement prescribed by section 14 of the act. In other words, the burden of proof is upon the plaintiff to establish the apparent validity of the contract upon which he relies for a recovery. Even then the defendant may render the contract null and void by alleging and proving that subsequent to the execution of such a valid contract the plaintiff received thereon some one or more of the things prohibited by section 13 of the statute. Applying these principles to the facts of the instant case, the court erred in overruling the certiorari.

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*