S93A0185. FLEET FINANCE, INC. OF GEORGIA et al. v. JONES et al.
(430 SE2d 352)

SEARS-COLLINS, Justice.

The appellant, Fleet Finance, Inc. of Georgia (hereinafter "Fleet"), holds promissory notes and security deeds from the three appellees, who filed the present action against Fleet. The appellees contended that Fleet was charging usurious interest rates under OCGA § 7-4-18 and that therefore Fleet should be enjoined from proceeding with threatened foreclosures and should be required to forfeit all interests contracted for under the notes. The appellees also moved for a class certification, contending, among other things, that § 7-4-21, which prohibits class certification where a loan is secured by real property, was unconstitutional. Fleet opposed the appellees' motion for class certification and filed a motion to dismiss the appellees' action, on the ground that the notes were not usurious. The trial court enjoined Fleet from proceeding with any foreclosures; granted the appellees' motion for class certification, ruling that § 7-4-21 was unconstitutional for numerous reasons; and denied Fleet's motion to dis-

miss. Although we do not condone Fleet's interest-charging practices, which are widely viewed as exorbitant, unethical, and perhaps even immoral, and suggest that further regulation of the lending industry is needed by our General Assembly to insure the economic survival of individuals like the appellees, we are constrained to hold that the loans in question are legal and not usurious. We thus must reverse the denial of Fleet's motion to dismiss. For that reason, we need not address the issues regarding class certification.

1. Whether the appellees' loans are usurious centers around various issues regarding the discount points and loan origination fees that Fleet charged to the appellees at the closing of their loans. These front-end interest fees ranged from 22 percent to 27 percent of the principal amount of the appellees' loans. The appellees did not pay for these fees in cash at closing. Instead, the fees were deducted from the face amount of the loans in question, thus reducing the net amount of loan proceeds actually paid to the appellees, and the appellees agreed to pay for them in a small, fixed amount over the life of the loan. The fees, however, became nonrefundable and nonrebateable at closing. In addition to these fees, Fleet charged yearly interest rates ranging from 18.9 percent per annum to 19.9 percent per annum.

In their complaint the appellees based their contention that the loans were usurious on OCGA § 7-4-18, which provides that

> [a]ny person, company, or corporation who shall reserve, charge, or take for any loan or advance of money . . . any rate of interest greater than 5 percent per month . . . shall be guilty of a misdemeanor.[1]

Before the trial court, the appellees contended that the use of the phrase "per month" in § 7-4-18 means that interest must be calculated for each individual month of the loan, and that, if the interest received in any one month exceeds five percent, the loan violates the statute. The appellees also contended that interest payments must be attributed to the month in which they are received and that nonrefundable discount points and origination fees must be deemed received in the first month of a loan. Calculating the interest under the appellees' method, the interest for the first month of the appellee's loans greatly exceed five percent. For instance, the interest rate for the first month of the loan of appellee Elizabeth Jones would be

---

[1] In *Norris v. Sigler Daisy Corp.*, 260 Ga. 271 (392 SE2d 242) (1990), we held that discount points and loan origination fees must be treated as interest under § 7-4-18, *Norris* at 272-273 (2), and that borrowers may rely on our criminal usury statute to seek civil penalties such as the forfeiture of interest, id. at 271-272 (1).

23 percent.

Fleet responded that under § 7-4-18 the "rate of interest . . . per month," must be calculated based upon the ratio of total interest paid to the total number of months in the loan. Fleet further contended that we adopted this method of calculating interest in *Norris v. Sigler Daisy Corp.*, 260 Ga. 271, 273 (3) (392 SE2d 242) (1990), and that *Norris* was controlling in this case. Moreover, Fleet responded that, even if § 7-4-18 were interpreted to prohibit interest greater than five percent in any one month of the loan, it should not be construed so as to attribute nonrefundable discount points and origination fees to the first month because they are amortized and paid over the life of the loan. Calculating the interest under Fleet's method, the monthly interest rates for the appellees' loans are 1.57 percent, 1.67 percent, and 1.60 percent,[2] well below 5 percent per month permitted by § 7-4-18.

With respect to Fleet's argument regarding *Norris*, the appellees conceded that in *Norris* we adopted the method of calculating interest urged by Fleet, but they contended that *Norris* was not controlling because the appropriate method of treating discount points and origination fees was not at issue in *Norris* and because Sigler Daisy Corp. would have lost the appeal even applying the interest calculation method most favorable to it.

The trial court ruled that under § 7-4-18 interest had to be calculated for each individual month of the loan; that if the interest in any one month exceeded five percent, the entire loan was usurious; that the discount points and origination fees had to be attributed to the first month of the appellees' loans; and that doing so caused the first month's interest for the loans to exceed five percent.

2. For numerous reasons, Fleet contends the trial court's ruling

---

[2] Under Fleet's method, the interest on the loan of appellee Elizabeth Jones is calculated as follows:

| | |
|---|---|
| Face amount of note | $16,140.00 |
| Less upfront interest fees | $ 2,895.00 |
| Net principal received by Jones | $13,245.00 |
| Sum of payments due under note | $50,808.60 |
| Minus net principal | $13,245.00 |
| Total cost of credit | $37,563.60 |
| Total cost of credit | $37,563.60 |
| Divided by months in loan | 180 |
| Simple interest per month | $208.69 |
| Interest per month | $208.69 |
| Divided by principal | $13,245.00 |
| Monthly interest rate | 1.57% |

was in error. We first address Fleet's contention that the method of calculation used in *Norris* is binding in this case. We disagree with Fleet's assertion, because the competing interpretations of § 7-4-18 advanced in this case were not advanced in *Norris* and because the method we adopted was most favorable to Sigler Daisy Corp. and still resulted in the company losing the appeal. Moreover, although earlier decisions of this court have calculated the rate of interest "per annum" by totalling the cost of credit over the life of the loan in determining if a loan that included up-front interest charges exceeded the specified rate "per annum," those decisions also did not address the competing interpretations of the usury statute urged in this case. *Green v. Equitable Mtg. Co.*, 107 Ga. 536, 539-540 (33 SE 869) (1899); *Clarke v. Havard*, 111 Ga. 242, 249 (36 SE 837) (1900); *Harvard v. Davis*, 145 Ga. 580, 586 (4) (89 SE 740) (1916).

3. We thus turn to Fleet's contention that § 7-4-18 must be interpreted generally to require the consideration of the total interest paid over the entire period of a loan in determining if a loan is usurious. As previously noted, the appellees contend that the statute should be interpreted to mean that a person who charges more than five percent in any given month of a loan is guilty of a misdemeanor.

With respect to this issue, we first note that § 7-4-18 is a criminal statute. It thus must be construed strictly against criminal liability and, if it is susceptible to more than one reasonable interpretation, the interpretation most favorable to the party facing criminal liability must be adopted. *Carsello v. State*, 220 Ga. 90, 94 (137 SE2d 305) (1964); *Bankston v. State*, 258 Ga. 188, 190 (367 SE2d 36) (1988). This rule applies even though a criminal statute is being construed in a civil context. *F.C.C. v. American Broadcasting Co.*, 347 U. S. 284, 296 (74 SC 593, 98 LE2d 699) (1954); *Bingham, Ltd. v. United States*, 724 F2d 921, 925 (11th Cir. 1984).

We conclude that the statute is subject to multiple interpretations and that strictly construing it, we must adopt the one most favorable to Fleet. Relying on *Hartsfield Co. v. Fulwiler*, 59 Ga. App. 194 (200 SE 309) (1938),[3] the appellees contend that the phrase "rate of interest . . . per month" requires an interest calculation for each individual month of the loan and that if the interest actually paid in any given month exceeds five percent, the entire loan is usurious. The appellees would thus interpret § 7-4-18 to read "rate of interest greater than 5 percent in any one month." However, "per month" is defined as "by the month," see Black's Law Dictionary, p. 1022 (5th ed. 1979), and thus does not necessarily mean "in any one month."

---

[3] *Fulwiler* interpreted the Small Loan Act of 1920, which prohibited a rate of interest greater than 3½ percent per month, consistently with the interpretation of § 7-4-18 that is advanced by the appellees.

Indeed, the method urged by Fleet, see footnote 2, supra, itself gives a rate of interest "by the month." Moreover, the phrase "per month" might merely be an integral part of the rate of interest by specifying how often the rate of interest may be charged, i.e, by the month, thus only establishing a benchmark by which some interest payment might be judged and not specifying that the interest payment to be judged is the interest actually paid in any one month or is the total interest for the loan period. Furthermore, if the phrase "any rate of interest greater than 5 percent per month" is read to require a calculation based on the actual interest paid for each individual month of the loan, it could just as easily be read to require the lender to charge more than five percent for each and every month of the loan, instead of for any one month of the loan, in order for the loan to be usurious.

Another consideration is that the construction of OCGA § 7-4-18 that is urged by Fleet is supported by § 7-4-1, which we have held must be construed with § 7-4-18; *Wall v. Lewis*, 192 Ga. 652 (16 SE2d 430) (1941). Section 7-4-1 provides that the "term 'usury' means reserving and taking or contracting to reserve and take . . . a greater *sum* for the use of money than the lawful interest." On a fixed-term loan, the "sum for the use of money" would appear to mean the total interest extracted over the life of the loan. Moreover, "lawful interest" would appear to mean the five percent per month specified in § 7-4-18. Thus, § 7-4-1 would appear to contemplate that a loan is not usurious under § 7-4-18 unless the total interest exceeded five percent per month.

Moreover, because the interest, including front-end points and fees, on a fixed-term, fixed-rate loan induces the lender to make the loan for the entire loan period and not for any one month or year, because the borrower has the use of the amount loaned for the entire loan period, and because the usury penalty applies to the interest for the entire contract, OCGA § 7-4-10; *Norris*, supra, 260 Ga. at 273 (4), it seems reasonable that the loan has to be tested for usury based on interest charged for the entire loan period. The Texas Supreme Court relied on these factors to hold that a usury statute that prohibits a specified rate of interest per annum is not violated when the interest for any one year exceeds the specified rate. *Tanner Dev. Co. v. Ferguson*, 561 SW2d 777, 787 (Tex. 1977). Instead, the court concluded that a usury statute is not violated so long as the aggregate amount of interest over the life of the loan, including front-end interest charges, does not exceed the amount permitted by law. Id. Relying on similar factors, other courts have reached the same conclusion on loans with front-end points and origination fees. *Montgomery Fed. Sav. &c. Assn. v. Baer*, 308 A2d 768, 771-773 (D.C. App. 1973); *B. F. Saul Co. v. West End Park North*, 246 A2d 591, 595-597 (Md. 1968); *Collins v. Union Fed. Sav. &c. Assn.*, 662 P2d 610, 616 (Nev. 1983); *French v.*

*Mtg. Guarantee Co.*, 104 P2d 655, 657-659 (Cal. 1940).[4]

The appellees advance several other contentions to support their "in any month" construction of § 7-4-18. They contend that Fleet's interpretation of § 7-4-18 will lead to the absurd result of permitting Fleet to charge as much as 200 points at closing and 19.9 percent interest per year without violating § 7-4-18. This contention, however, reflects displeasure not so much with spreading points and origination fees but with the fact that § 7-4-18 does not regulate points and permits 60 percent interest a year, as Fleet could simply extract the same amount of interest as that posed by the appellees' hypothetical by charging interest of 60 percent per year. The "absurd result" advanced by the appellees is thus permitted by law. The appellees' displeasure with this result is a matter better expressed to the General Assembly. Moreover, the hypothetical posed by the appellees is offset by the equally troubling hypotheticals posed by Fleet if we were to adopt the appellees' position.

The appellees also contend that Fleet's construction of § 7-4-18 should not be adopted because it is possible that, if a borrower took out a loan with high nonrebateable front-end interest charges and made an early prepayment of the loan, the payoff of the loan would include interest in excess of five percent per month. However, it is well-established that usury cannot be based upon speculation of such a contingent event. See 47 CJS 255, Interest & Usury; Consumer Credit, §§ 139 & 140.[5]

Having evaluated the foregoing reasons advanced in support of the conflicting interpretations of § 7-4-18, we conclude that Fleet's construction of the statute is at least as reasonable, if not more so, than the construction advanced by the appellees. Because § 7-4-18 is a criminal statute, we must adopt the interpretation urged by Fleet. We thus now expressly approve the method of calculating usury for purposes of § 7-4-18 employed in *Norris*. To the extent that *Fulwiler*, supra, 59 Ga. App. 194, and *Crowe v. State*, 44 Ga. App. 719 (162 SE 849) (1931), are inconsistent with this opinion, they are overruled.

4. Furthermore, even adopting the appellees' interpretation that interest must be calculated under § 7-4-18 based on the interest re-

---

[4] We express no opinion as to the proper rule to apply in cases dealing with variable interest, indefinite term loans.

[5] The appellees do not contend that Fleet has accelerated any of their loans and made a demand for payment, including all front-end interest, that would amount to usury when the interest rate is calculated from the inception of the loan to the date of acceleration. Whether such circumstances would warrant the truncation of the loan period from that agreed to by the parties is not now before us. Compare *Savannah Sav. Bank v. Logan*, 99 Ga. 291 (25 SE 692) (1896), and *Knight v. First Federal Sav. &c. Assn.*, 151 Ga. App. 447, 450 (260 SE2d 511) (1979), with *Williams v. First Bank &c. Co.*, 154 Ga. App. 879, 881-883 (4) (269 SE2d 923) (1980) and *Goodwin v. Trust Co.*, 144 Ga. App. 787, 790-791 (3) (242 SE2d 302) (1978).

ceived in any given month, we conclude that § 7-4-18 cannot be construed so as to attribute nonrefundable points and origination fees to the first month of a loan when those items are actually paid over the life of the loan.

The purpose of construing § 7-4-18 to prohibit lenders from charging more than five percent interest in any one month would be to permit borrowers to know the status of their principal and interest payments on a monthly basis and to prevent lenders from assessing a high interest charge in any one month. *Hartsfield Co. v. Fulwiler*, supra, 59 Ga. App. 195-196. Here, the structure of the loans do not violate the intent of the statute as so construed. Under their agreement with Fleet, the appellees have fixed payments every month, faced no threat of default at closing by the deduction of the points and origination fees, and similarly face no threat of default through high interest charges in any given month, as it is undisputed that the appellees pay a set amount of interest every month that is well under the five percent permitted by law.

For this reason, and because § 7-4-18 is a criminal statute that must be strictly construed, we conclude that even if § 7-4-18 prohibited a lender from charging in excess of five percent in any one month, the front-end interest charges could not be attributed to the first month of the loan. With these items attributed to the month in which they were paid, the loans in question are not usurious.

*Judgment reversed. All the Justices concur, except Benham, J., who dissents.*

BENHAM, Justice, dissenting.

I respectfully dissent because I believe that today this court takes a regrettably bold step backwards in spite of legislation, precedent, common sense and public policy to the contrary. Without a doubt chaos will follow in the wake of today's decision, bringing financial ruin to thousands of households and Georgia will become a safe haven for those desirous of taking unfair advantage of unsuspecting borrowers.

In no way am I unmindful that the issue before the court is one which evokes tremendous emotions on both sides of the issue. However, emotions should be put aside and laws should be interpreted in a way so as not to favor creditor or debtor. The only way to keep the proper balance is for this court to be guided by the rule of law and its fair application to all parties involved. It is the pursuit of this balance that gives rise to my dissent.

1. The majority opinion correctly decides that the result it reaches is not dictated by *Norris v. Sigler Daisy Corp.*, 260 Ga. 271 (392 SE2d 242) (1990); however, even though there is no reliance on *Norris*, some explanation of that decision is beneficial. Although *Nor-*

*ris* mentions spreading as a method to determine the interest rate charged, that was not the issue before the court. Rather, the issue before the court was whether origination fees, points and other charges should be considered as interest under the criminal usury statute, OCGA § 7-4-18. *Norris* held that such fees are interest and it went on to give an illustration of one of several methods used to figure interest, using the method most favorable to the creditor. It is abundantly clear that the language dealing with spreading in *Norris* was in no way intended to adopt a spreading approach since spreading was not the issue before the court, and there was preexisting precedent adopting a monthly approach (see *Hartsfield Co. v. Fulwiler*, 59 Ga. App. 194 (200 SE 309) (1938); *Crowe v. State*, 44 Ga. App. 719 (162 SE 849) (1931); and *Jobson v. Masters*, 32 Ga. App. 60 (122 SE 724) (1924)), which *Norris* neither cited nor disavowed or overruled. Therefore, the use of spreading should be considered only as illustrative of a point and should not be considered as instructive as to the method of computing interest.

2. The majority opinion bases its decision in part on the fact that OCGA § 7-4-18 is a criminal, rather than a civil, statute that is "subject to multiple reasonable interpretations." In Div. 3, the majority states as follows:

> With respect to this issue, we first note that § 7-4-18 is a criminal statute. It thus must be construed strictly against criminal liability and, if it is susceptible to more than one reasonable interpretation, the interpretation most favorable to the party facing criminal liability must be adopted. [Cits.] This rule applies even though a criminal statute is being construed in a civil context. [Cits.]
> We conclude that the statute is subject to multiple interpretations and that strictly construing it, we must adopt the one most favorable to Fleet.

I agree with the majority that criminal statutes must be strictly construed and that the same rule applies even when the issue arises in a civil proceeding; however, I disagree with the majority's conclusion that OCGA § 7-4-18 is ambiguous and thus in need of judicial construction.

The pertinent language of OCGA § 7-4-18 is as follows:

> (a) Any person, company, or corporation who shall reserve, charge, or take for any loan or advance of money, or forbearance to enforce the collection of any sum of money, any rate of interest greater than 5 percent per month, either directly or indirectly, by way of commission for advances, discount,

exchange, or the purchase of salary or wages; by notarial or other fees; or by any contract, contrivance, or device whatsoever shall be guilty of a misdemeanor; . . .

(b) This Code section shall not be construed as repealing or impairing the usury laws now existing but shall be construed as being cumulative thereof.

Focusing on the phrase "per month," the majority concludes that OCGA § 7-4-18 is ambiguous. However, the Georgia Court of Appeals has several times had the opportunity to expound on the phrase "per month." In *Jobson v. Masters*, supra at 65,[6] the court stated:

> In authorizing an interest charge of 3½ per cent per month that statute deals not with days, but with months; and the word "month," as therein used, means a calendar month . . . .

In *Hartsfield Co. v. Fulwiler*, supra, the Court of Appeals revisited the Small Loan Act. In that case, the lender put forth the argument Fleet Finance is now making: that, despite the statutory language describing the interest rate as "per month," the lender should be able to "spread" the interest rate over the life of the loan. In no uncertain terms, the appellate court responded:

> Can the plaintiff . . . spread his interest rate over a period of [the term of the loan] and arbitrarily divide his interest up for each separate month of the [term] to suit himself, even though in some of these months he charges more than 3½ per cent per month, so long as at the expiration of the [term of the loan] he had not charged as interest for the entire [term] a sum total in excess of 3½ per cent per month? We think not. *This would be allowing the plaintiff to arbitrarily treat the [term of the loan] as the unit of time for the computation of interest, whereas the statute says that the unit of time for the computation of interest is a month, not [the term of the loan], not a year, not five years, not any other time, but a month. [The statute] makes the unit of time for the computation of interest 3½ per cent per month. No other unit of time for the computation of interest is mentioned in said section.* [Emphasis supplied.] [Id. at 195.]

In *Crowe v. State*, supra, the court affirmed an appeal from a criminal

---

[6] In *Jobson*, the court was interpreting the "Small Loan Act," a statute passed in 1920 which authorized certain licensed persons to charge and collect interest at the rate of 3½ percent per month on loans of $300 or less. See Ga. L. 1920, p. 215.

conviction for violating § 7-4-18's predecessor. In that case, Crowe charged and collected $3 per month for an advance of credit of $10, for 12 months. He was convicted of twelve counts of "taking interest greater than five per centum per month . . ." because he had charged and collected interest at a rate of thirty percent per month ($3 on a $10 debt) for twelve months.

For nearly 60 years, the appellate decisions of this State have consistently held that the phrase "per month," when used in a statute setting an interest rate, meant exactly what it said: "per month." The language of the statute is clear and unequivocal and is not subject to multiple reasonable interpretations. The statute specifically states that it prohibits "any rate of interest greater than 5 percent per month." The only reference is to monthly interest. Where no ambiguity exists, there is no need to construe a statute.

I am fearful that the language in the majority opinion indicating that OCGA § 7-4-18 is subject to multiple reasonable interpretations will open the flood gates for challenges to be made to a host of other criminal statutes which are equally as specific as this one. Many criminal laws may very well be thrown into a state of uncertainty by the approach the majority opinion takes. If this court desires to change the law, then it should do so forthrightly and not hinge its decision on some purported ambiguity in the criminal usury statute which is written in a clear and unequivocal manner.

3. I also take issue with the majority's ultimate conclusion that appellant's collection of nonrefundable, non-rebatable interest charges at closing does not constitute conduct made illegal by OCGA § 7-4-18: the reserving, charging, or taking for any loan or advance of money an interest rate that exceeds five percent *per month*. In the case at bar, Fleet Finance required the borrowers to pay at closing nonrefundable, non-rebatable interest fees ranging from 22 to 27 percent of the principal amounts of the borrowers' loans. The parties stipulated that these prepaid finance charges were fully earned at closing. The majority endorses amortization of the prepaid interest charges over the life of the loan and can then conclude that the loans involved herein are not usurious under § 7-4-18. However,

> [p]ermitting a lender to charge nonrefundable fees upon the execution of a loan, yet amortize the charges over the life of the loan in order to come within a perceived sixty (60%) percent per annum interest limitation (5% per month x 12 mos.), is inherently unfair to the borrower and inconsistent with the purpose of the statute. [*In re Evans*, 130 B.R. 357, 360 (Bkrtcy. S.D. Ga. 1991).]

Since the prepaid interest accrued immediately and was nonrefund-

able and non-rebatable, it was applicable to the first month of the loan, resulting in an interest rate for the initial month of the loan in excess of five percent. See *Hartsfield Co. v. Fulwiler*, supra; *Crowe v. State*, supra; *Jobson v. Masters*, supra. See also *In re Wright*, 144 B.R. 943 (Bkrtcy. S.D. Ga. 1992); *In re Dent*, 130 B.R. 623 (Bkrtcy. S.D. Ga. 1991); *In re Evans*, supra; *Moore v. Comfed Sav. Bank*, 777 FSupp. 960 (S.D. Ga. 1991).

4. Fleet Finance resorted to "an unconventional and innovative method of charging for the use of money" (*Moore v. Comfed Sav. Bank*, supra at 961) at a rate substantially in excess of five percent per month. The majority opinion condemns the practices of appellant here; however, it states that it is the legislature's job to correct these "interest-charging practices, which are widely viewed as exorbitant, unethical, and perhaps even immoral. . . ." To that statement I say the legislature has already done its job. If further legislative action is now needed, it is because this court has created confusion where none previously existed. What I seek to do is carry out the legislative mandate which has been clearly set forth since 1908: to declare as illegal those interest rates which exceed five percent per month.[7] In doing so we can uphold and respect judicial precedent in place since 1938 and, at the same time, foster better business practices, encourage fair dealings, and heighten the level of professionalism in the financial community.

DECIDED JUNE 14, 1993 —
RECONSIDERATION DENIED JUNE 25, 1993.

*Varner, Stephens, Wingfield & Humphries, J. Timothy White, Carolyn Thorn Thurston, King & Spalding, Frank C. Jones, William S. Duffey, Jr., William A. Trotter III*, for appellants.

*Burnside, Wall, Daniel & Ellison, Thomas R. Burnside, Jr., Thompson & Smith, James M. Thompson, Larry I. Smith, Stephen E. Shephard*, for appellees.

*Michael J. Bowers, Attorney General, Beverly B. Martin, Senior Assistant Attorney General, Lefkoff, Duncan, Grimes & Dermer, Joseph Lefkoff, Long, Aldridge & Norman, W. Stell Huie, Jones, Day, Reavis & Pogue, W. Rhett Tanner, Gregory R. Hanhorn, Knox & Zacks, Ted H. Clarkson, Dye, Tucker, Everitt, Wheale & Long, A.*

---

[7] "It was the evident purpose of the legislature to make criminal a rate of interest which shocks the moral sense, and to protect the needy from a rate of interest exceeding 5 per cent per month." *Bennett v. Lowry*, 167 Ga. 347, 351 (145 SE 505) (1928). "Interest to the amount of 5 per cent per month certainly ought to satisfy the greediest of money lenders. . . ." *King v. State*, 136 Ga. 709, 715 (71 SE 1093) (1911).

*Rowland Dye, Thomas W. Tucker, John B. Long, Hull, Towill, Norman & Barrett, David E. Hudson, Lisa J. Krisher, Steven D. Caley, Paul E. Kauffmann, William J. Brennan, Jr., Arrington & Hollowell, Marvin S. Arrington, Randy C. Gepp, Gary W. Diamond, McCalla, Raymer, Padrick, Cobb & Nichols, Carol V. Clark, Arnall, Golden & Gregory, Hugh W. Gibert,* amici curiae.