4 F.3d 946
 Johnnie L. JOHNSON, Barbara Ann Johnson, William L. Mance,
Mary L. Mance, Waralene Hopkins and all Persons
Similarly Situated, Plaintiffs-Appellants,
v.
FLEET FINANCE, INC., Fleet Finance, Inc. of Ga., Tower
Financial Services, Inc., Mortgage Equity Services
and Donnetta Lowe, d/b/a Lowe and
Associates, Defendants-Appellees.
Johnnie J. JOHNSON, Barbara Ann Johnson, William L. Mance,
Mary L. Mance, John Mance, Waralene Hopkins and
all other persons similarly situated,
Plaintiffs-Appellants,
v.
FLEET FINANCE, INC., Fleet Finance, Inc. of Georgia,
Mortgage Equity Services, and Donnetta Lowe, d/b/a
Lowe and Associates, Defendants,
Tower Financial Services, Inc., Defendant-Appellee.
 Nos. 92-8352, 92-8621.
 United States Court of Appeals,
Eleventh Circuit.
 Oct. 19, 1993.
 
 Larry Ira Smith, James Marion Thompson, Thompson & Smith, P.C., Thomas Reuben Burnside, Jr., Harry Duff Revell, James Barnard Wall, Burnside Wall Daniel & Ellison, Stephen Eugene Shepard, Augusta, GA, for plaintiffs-appellants.
 Donald A. Loft, Walter Rhett Tanner, Gregory R. Hanthorn, Jones Day Reavis & Pogue, Atlanta, GA, William Augustus Trotter, III, Robert C. Hagler, Benjamin F. McElreath, Augusta, GA, Hugh W. Gibert, Arnall, Golden & Gregory, William S. Duffey, Jr., Sean R. Smith, Frank C. Jones, King & Spaulding, Atlanta, GA, for defendants-appellees.
 Appeals from the United States District Court for the Southern District of Georgia.
 Before KRAVITCH and BLACK, Circuit Judges, and DYER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Two issues are presented in this appeal: the proper construction of the Georgia criminal usury statute, Ga.Code Ann. Sec. 7-4-18 (Case No. 92-8352); and whether a loan broker's fee constitutes a finance charge under the federal Truth in Lending Act, 15 U.S.C. Sec. 1605(a), when the lender neither receives part of the fee nor requires the borrower to use a loan broker (Case No. 92-8621).
 
 
 2
 As to the first issue, federal courts sitting in diversity must apply the substantive law of the forum state. Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). In particular, we are bound by the state court's interpretation of its own state statute. E.g., Wisconsin v. Mitchell, --- U.S. ----, ----, 113 S.Ct. 2194, 2198, 124 L.Ed.2d 436 (1993). In Fleet Finance, Inc. of Georgia v. Jones, 263 Ga. 228, 430 S.E.2d 352 (1993), the Supreme Court of Georgia adopted the same construction of section 7-4-18 as did the district court in this case. We are obliged to follow Jones. Accordingly, we affirm the district court on this issue.
 
 
 3
 As to the second issue, we agree with both the judgment and the reasoning of the district court. We therefore adopt its opinion, which we attach as an appendix, as the opinion of this court.
 
 
 4
 AFFIRMED.
 
 APPENDIX
 United States District Court
 Southern District of Georgia
 Augusta Division
 
 5
 JOHNNIE J. JOHNSON, BARBARA ANN JOHNSON, WILLIAM L. MANCE,
 
 
 6
 MARY L. MANCE, JOHN MANCE, WARALENE HOPKINS, and
 
 
 7
 all other persons similarly situated, Plaintiffs,
 
 
 8
 v.
 
 
 9
 FLEET FINANCE, INC., FLEET FINANCE INC. OF GEORGIA, TOWER
 
 
 10
 FINANCIAL SERVICES, INC., MORTGAGE EQUITY SERVICES
 
 
 11
 and DONNETTA LOWE, d/b/a LOWE &
 
 
 12
 ASSOCIATES, Defendants.
 
 CV 191-121
 Filed June 5, 1992
 ORDER
 
 13
 On February 21, 1992, this Court dismissed all of the Plaintiffs' claims except one. Remaining is a claim that Defendant Tower Financial Services, Inc. ("Tower") violated the federal Truth in Lending Act ("TILA"), 15 U.S.C. Secs. 1601-77 (1988). Although Plaintiffs Mary L. and John Mance concede that Tower disclosed all fees and charges on the Mances' disclosure documents, the Mances argue that Tower listed one fee improperly. Specifically, the Mances contend that Tower violated TILA by disclosing a fee paid to a broker, Donnetta Lowe, as part of the "amount financed" rather than as a separate "finance charge."
 
 
 14
 Before the Court is Tower's motion for summary judgment on this TILA claim. As explained below, the Court GRANTS this motion.
 
 BACKGROUND
 
 15
 On about September 1, 1990, the Mances responded to Lowe's newspaper advertisement, which offered residential mortgage loans. Lowe went to the Mances' home and obtained information that she needed to broker a mortgage loan for them. On September 24, 1990, the Mances executed and delivered to Tower a promissory note in the principal amount of $30,800.00 and a deed to secure debt as security for that loan. On October 1, 1990, Tower transferred and assigned the note and deed to secure debt to Fleet Finance of Georgia. For her role in the transaction, Lowe received a $3,080.00 fee. Tower calls this fee a brokerage fee, but the Mances describe it as an origination fee.
 
 
 16
 At issue in this case is whether Tower properly disclosed Lowe's brokerage or origination fee to the Mances within the loan disclosure documents. As indicated above, Tower included the fee as part of the "amount financed" on the face of the note. On a separate document entitled "Itemization of Amount Financed," Tower listed Lowe's fee as a separate entry. The Mances claim that Tower should have included Lowe's fee as a separate "finance charge" rather than as part of the "amount financed." If so, then the disclosure documents suggested that the cost of the loan was lower than it actually was. As explained in more detail below, the Mances' claim that Lowe's fee is a finance charge is valid only if Tower requires borrowers to use a broker's services.
 
 
 17
 Although brokers are involved in many Tower loan transactions, Tower claims that it has never required borrowers to use a broker in order to obtain a Tower loan. According to Tower, between January 1987 and June 1991, Tower made 2,155 mortgage loans. Of those loan transactions, 1,497 involved the services of a broker, but 658 did not. From June 21, 1990 to June 21, 1991, Tower claims that it made 406 mortgage loans. Of those 406 transactions, brokers were involved in 294, but not involved in 112. The Mances controvert these figures with evidence that shows that from June 21, 1990 to November 26, 1991, brokers or originators were involved in 83.5% of Tower's loan transactions.
 
 ANALYSIS
 I. Summary Judgment
 
 18
 The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56 advisory committee's note). The Court's analysis ends "where there is no genuine issue of material fact and where the moving party is entitled to judgment as a matter of law." Great Lakes Dredge & Dock Co. v. Miller, 957 F.2d 1575, 1578 (11th Cir.1992); Real Estate Fin. v. Resolution Trust Corp., 950 F.2d 1540, 1543 (11th Cir.1992) (both citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). Thus, summary judgment is appropriate where the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S.Ct. at 2552; Tidmore Oil Co. v. BP Oil Co./Gulf Prods. Div., a Div. of BP Oil Co., 932 F.2d 1384, 1387-88 (11th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991).
 
 
 19
 "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323, 106 S.Ct. at 2552; see Goree v. Winnebago Indus., Inc., 958 F.2d 1537, 1539 (11th Cir.1992). If the movant successfully discharges this initial burden, the burden shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Thompson v. Metropolitan Multi-List, Inc., 934 F.2d 1566, 1583 n. 16 (11th Cir.1991); see Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 913, 116 L.Ed.2d 813 (1992); Chanel, Inc. v. Italian Activewear of Fla., Inc., 931 F.2d 1472, 1477 (11th Cir.1991).
 
 
 20
 The nonmovant "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); United States v. Gilbert, 920 F.2d 878, 882 (11th Cir.1991). If the nonmoving party's response to the summary judgment motion consists of nothing more than mere conclusory allegations, then the Court must enter summary judgment in the moving party's favor. Peppers v. Coates, 887 F.2d 1493, 1498 (11th Cir.1989).
 
 
 21
 In assessing whether the movant is entitled to summary judgment in its favor, the district court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmoving party. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir.1992); Ryder Int'l Corp. v. First Am. Nat'l Bank, 943 F.2d 1521, 1523. The Court must avoid weighing conflicting evidence, Liberty Lobby, 477 U.S. at 255, 106 S.Ct. at 2513; Ryder, 943 F.2d at 1523; Brown v. Hughes, 894 F.2d 1533, 1536 (11th Cir.), cert. denied, 496 U.S. 928, 110 S.Ct. 2624, 110 L.Ed.2d 645 (1990); Tippens v. Celotex Corp., 805 F.2d 949, 953 (11th Cir.1986), or making credibility determinations. Liberty Lobby, 477 U.S. at 255, 106 S.Ct. at 2513; McKenzie v. Davenport-Harris Funeral Home, 834 F.2d 930, 934 (11th Cir.1987). A mere "scintilla" of evidence supporting the opposing party's position, however, will not suffice. E.g., Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir.1990). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a general issue of material fact, then the court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir.1989) (citation omitted).
 
 II. TILA, Regulation Z, and Staff Commentary
 
 22
 To decide whether a particular loan closing expense constitutes a "finance charge" under TILA, courts must consult the statute, 15 U.S.C. Sec. 1605(a), and the applicable portion of Regulation Z, 12 C.F.R. 226.4(b)(3), promulgated by the Federal Reserve Board. The official staff interpretations of Regulation Z, unless demonstrably irrational, are binding. Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 565, 100 S.Ct. 790, 796, 63 L.Ed.2d 22 (1980).
 
 
 23
 The official staff commentary to Regulation Z indicates that "[c]harges imposed on the consumer by someone other than the creditor for services not required by the creditor are not finance charges, as long as the creditor does not retain the charges." Regulation Z, Supplement I--Official Staff Interpretations ("Commentary"), 12 C.F.R. Sec. 226.4(a)(3) (1991). Because Tower did not retain the fees listed as paid to Lowe, Lowe's fees were finance charges only if the brokerage services were "required by the creditor," Tower.
 
 
 24
 The Mances concede that they contacted Lowe after reading her newspaper advertisement and that Tower did not encourage them to consult Lowe. Thus, there is no evidence that Tower actually pressured the Mances into using Lowe's services. On the contrary, the Mances sought Lowe's assistance on their own. Nevertheless, the Mances contend that Tower informally requires all borrowers to use the services of a loan broker. By contacting a broker before obtaining their loan from Tower, the Mances suggest that they complied with Tower's broker requirement without realizing that it was a requirement. If so, then Lowe's fees should have been disclosed as part of the "finance charges."
 
 
 25
 Tower denies that it had any practice, formal or informal, that required the services of loan brokers. In support of its position, Tower submits affidavits denying that any such practice occurred. Tower also shows the Court that many Tower loans did not involve loan brokers. According to the Plaintiffs' own evidence, only 83.5% of Tower's loan transactions from June 21, 1990 to November 26, 1991, involved broker-originators. Thus, over 15% of Tower's loans involved no brokers. This evidence suggests that Tower did not require borrowers to use loan brokers.
 
 
 26
 In response to the summary judgment motion, the Mances present no affirmative evidence that would establish a genuine issue of material fact. The Mances do not, for example, offer affidavits of other borrowers who contacted Tower and were directed to use a broker or told that they could not obtain a loan without a broker. Instead, the Mances ask the Court to infer a broker requirement from the fact that 83.5% of Tower's loans involved a broker. As Tower argues, this inference is not a reasonable one. Although Tower's borrowers often use brokers, the Mances have produced no evidence whatsoever that Tower requires borrowers to use a broker. Because Tower did not require the Mances to use Lowe or another broker, the Court finds that her fee was not a "finance charge."
 
 
 27
 The Mances urge the Court to deny Tower's motion for summary judgment even if the Court finds that Tower did not require the use of a broker. First, the Mances contend that Lowe's fees are an origination fee, which is a finance charge under Georgia law. This contention is irrelevant to the Mances' claim that Tower violated TILA, a federal law.
 
 
 28
 Second, the Mances argue that the Court should not follow the official staff commentary to Regulation Z, 12 C.F.R. 226.4(b)(3), because it is "demonstrably irrational." See Ford Motor Credit, 444 U.S. at 565, 100 S.Ct. at 796. The Court disagrees. The "creditor required" provision is consistent with the statute itself, which defines a finance charge as "the sum of all charges payable ... by the person to whom credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. Sec. 1605(a) (emphasis added). Thus, the official staff commentary provides a reasonable interpretation of the statute and regulation.
 
 CONCLUSION
 
 29
 In response to Tower's properly supported motion for summary judgment, the Mances have presented no evidence that Tower required them to use the services of a broker. Because Tower did not require Lowe's services, TILA did not require Tower to list Lowe's fee as a finance charge. Tower has shown that the Mances will not be able to meet their burden at trial. Accordingly, the Court GRANTS Tower's motion for summary judgment.